RECEIVED
NOV 21 2013
AT 8:30_____M
WILLIAM T WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Peter G. Sheridan |
| v. | : | Crim. No. 13-749 (PGS) |
| GLEN ALBANESE | : | 18 U.S.C. § 1349 |

### INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

### Relevant Individuals and Entities

1.  At all times relevant to this Information:

    a.  Defendant GLEN ALBANESE was a resident of Monmouth County, New Jersey. From in our about January 2000 through in or about December 2010, defendant ALBANESE was employed as the Chief Financial Officer of Broker-Dealer A, a registered broker-dealer with headquarters in New York, New York. In his capacity as Chief Financial Officer, defendant ALBANESE had the authority to negotiate contracts with vendors of Broker-Dealer A and to approve or disapprove invoices submitted by vendors of Broker-Dealer A.

    b.  Vincent Sarubbi, a co-conspirator who is not charged as a defendant herein, resided in Monmouth County, New Jersey. From at least in or about June 1999 through in or about December 2010, Vincent Sarubbi owned Data Source Partners Inc. ("Data Source Partners"), an information technology consulting company with headquarters in Monmouth County, New Jersey.

    c.  Eric Siegel, a co-conspirator who is not charged as a defendant herein, resided in New York. From at least in or about 2005 through in or about December 2010, Eric

Siegel worked at S&R Graphic Company ("S&R Graphic"), a commercial printing company with headquarters in New York, New York.

### The Conspiracy

2.  From at least in or about 2000 through in or about December 2010, in the District of New Jersey and elsewhere, defendant

GLEN ALBANESE

did knowingly and intentionally conspire and agree with Vincent Sarubbi, Eric Siegel and others to devise a scheme and artifice to defraud Broker-Dealer A, and to obtain money and property from Broker-Dealer A by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce certain writing, signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

### Object of the Conspiracy

3.  It was the object of the conspiracy for defendant GLEN ALBANESE and his coconspirators to obtain money from Broker-Dealer A by submitting fraudulent invoices to Broker-Dealer A from Data Source Partners and S&R Graphic for services that were never provided.

### Manner and Means of the Conspiracy

4.  It was part of the conspiracy that defendant GLEN ALBANESE directed Vincent Sarubbi, Eric Siegel and others to create and send to Broker-Dealer A invoices that were fraudulent in that they either (1) charged for services that were never provided, or (2) inflated the amount due for services that were provided (collectively, the "Fraudulent Invoices").

5.  It was further part of the conspiracy that, at defendant ALBANESE's direction,

Vincent Sarubbi, Eric Siegel and others created and sent to Broker-Dealer A dozens of Fraudulent Invoices.

6. It was further part of the conspiracy that defendant ALBANESE caused Broker-Dealer A to pay the Fraudulent Invoices, even though he knew them to be fraudulent.

7. It was further part of the conspiracy that defendant ALBANESE then directed Vincent Sarubbi, Eric Siegel and others to funnel the illicit proceeds of the scheme to him. In order to conceal the scheme, however, defendant ALBANESE told Vincent Sarubbi, Eric Siegel and others not to send the illicit proceeds to defendant ALBANESE directly, but rather, directed them to use the illicit proceeds to pay his personal expenses.

8. For example, at defendant ALBANESE's direction, Vincent Sarubbi caused checks and wires to be issued from DataSource Partners' corporate checking account, which were comprised of proceeds of the fraudulent invoicing scheme, to pay for private landscaping services and the installation of home theater equipment at defendant ALBANESE's residence.

9. Similarly, at defendant ALBANESE's direction, Eric Siegel caused checks and wires to be issued from S&R Graphic's corporate checking account, which were comprised of proceeds of the fraudulent invoicing scheme, to pay for personal expenses of defendant ALBANESE including the following:

    a. Landscaping services at defendant ALBANESE's residence;

    b. Interior decorating services at defendant ALBANESE's residence;

    c. A designer-breed dog and "canine fence;"

    d. Equestrian equipment;

    e. Thousands of dollars worth of wine;

    f. Tickets to Wald Disney World and Six Flags theme parks;

    g. Children's toys and games;

    h. Fitness equipment and sporting goods;

    i. Computer equipment; and

    j. More than $40,000 in flights, hotels and travel expenses.

  10. Also, on numerous occasions, defendant GLEN ALBANESE directed Eric Siegel to meet him at predetermined locations in New York City and deliver to him envelopes containing thousands of dollars in cash comprised of the illicit proceeds from the scheme.

  11. Defendant GLEN ALBANESE sent, or caused to be sent, numerous interstate wires from or to New Jersey in furtherance of the scheme. For example, on or about February 16, 2008, defendant GLEN ALBANESE faxed a note from his home in New Jersey to Eric Siegel at the offices of S&R Graphic in New York. In the note, defendant ALBANESE informed Eric Siegel that he had charged approximately $2,905.60, which was comprised of proceeds from the fraudulent invoicing scheme, to S&R Graphic's corporate credit card.

  12. In total, defendant GLEN ALBANESE obtained approximately $1,000,000 from Broker-Dealer A as a result of the submission of the Fraudulent Invoices.

  All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1.  The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.  The United States hereby gives notice to the defendant, that upon his conviction of the offense charged in this Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense.

3.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described above.

PAUL J. FISHMAN
United States Attorney

5

CASE NUMBER: 13-741 (PGS)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

## GLEN ALBANESE

## INFORMATION FOR
### 18 U.S.C. § 1349

PAUL J. FISHMAN
UNITED STATES ATTORNEY, NEWARK, NEW JERSEY

CHRISTOPHER J. KELLY
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
(973) 645-6112